# UNITED  STATES  DISTRICT  COURT

# SOUTHERN  DISTRICT  OF  GEORGIA

# SAVANNAH  DIVISION

|  |  |  |
|---|---|---|
| MARSHALL DURELL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CV411-264 |
| | ) | |
| BRIAN A. MUNDY, GARY PROVOST, | ) | |
| and JIMMIE McDUFFIE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Marshall Durell Brown's 42 U.S.C. § 1983 civil rights complaint.  (Doc. 1.)  The Court granted Brown leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form.  (Doc. 3.)  He has returned the two forms, so the case is ready to proceed.  (Docs. 4 & 5.)

The Prison Litigation Reform Act ("PLRA") requires federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient.  28

U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine the complaint to determine whether it states a colorable claim for relief.

Brown's complaint, in raw form, explains:

> On or about August 13, 2010 I was arrested at my house in Guyton GA by Effingham, GA, sheriffes. I was beet real bad by officers. When I got to the county jail to be booked in jailers requested that I be taken to Effingham hospital to be checked out due to my injuries. While in the hospitle I was handcuffed to a hospitle bed by Deputy, Gary Provost. And Sergant Brian Mundy shot me in the back with his tazor. See Attached police Report Incident Highlighted.[1]

---

[1] According to the police reports, Brown a most combative suspect. Officers were dispatched to a domestic dispute involving Brown, whom they knew to be wanted in South Carolina. (Doc. 1 at 7.) When they arrived, Brown was hiding in the home's crawl space. (*Id.*) The officers instructed Brown to exit the crawl space, but he refused even after they "administer[ed] pepper spray." (*Id.*) Brown managed to escape and ran across a nearby canal. (*Id.*) There he picked up a shovel handle, which he swung about in order to force the pursuing officers to keep their distance. (*Id.*) He ran into some dense vegetation, and the officers again pursued, now accompanied by additional deputies and a canine that had just arrived at the scene. (*Id.*) He managed to evade his pursuers for another 37 minutes before being spotted near the back of the residence. (*Id.*) He attempted to enter a vehicle but fled on foot when he noticed the police. (*Id.*) Again, he ran for an area with thick cover. (*Id.*)

2

(Doc. 1 at 5.)  He also points out that a signature is missing from one of the police reports he attached to his complaint.  (*Id.*)  He asks that the charges against him be dropped and that he be paid for his injuries.[2]  (*Id.* at 6.)

To the extent Brown seeks an injunction against his prosecution (perhaps because the police report is missing a signature, but his reasoning is far from clear), his claims should be dismissed.  "Attentive to the principles of equity, comity, and federalism, the Supreme Court has recognized that federal courts should abstain from exercising

---

An officer located Brown lying on his back in a ditch and directed him to roll over onto his stomach, but he refused.  (*Id.*)  The officer tased Brown, but Brown still resisted, prompting the officer to release a second charge.  (*Id.* at 8.)  Apparently the taser had little effect.  Brown broke the taser leads and again tried to flee.  (*Id.*)  Another officer arrived and took him to the ground.  (*Id.*)  Still refusing to surrender, a long fight ensued.  (*Id.*)  Brown reached for defendant Provost's duty weapon but could not get control of it.  (*Id.*)  He was eventually overpowered, handcuffed, and taken to jail.  (*Id.*)

Jail officials asked the arresting officers to take Brown to the hospital for medical treatment.  (*Id.*)  While handcuffed to a bed in the emergency room, Brown kicked a nearby deputy and attempted to remove the handcuff, while verbally assaulting the surrounding officers.  (*Id.*)  He also spit on Officer Provost.  (*Id.*)  Officer Mundy placed his taser against Brown's back and released a charge, which finally "return[ed] order to the room."  (*Id.*)

[2] He also asks that the defendants be reprimanded for their actions.  (Doc. 1 at 6.)  Any reprimands must issue from the defendants' employer.  The Court has no authority in that regard.

jurisdiction in suits aimed at restraining pending state criminal prosecutions." *Jackson v. Georgia*, 273 F. App'x 812, 813 (11th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). Consequently, this Court may not interfere with Brown's state criminal prosecution unless: (1) there is a "great and immediate" danger of irreparable harm to be suffered as a result of the prosecution; (2) the state law is flagrantly and patently violative of the federal constitution; (3) there is a showing of bad faith or harassment; or (4) other unusual circumstances call for equitable relief. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citing *Younger*, 401 U.S. at 46-54); *Cole v. State of Florida*, 2010 WL 2711861 at * 3 n. 4 (N.D. Fla. Jun. 3, 2010). Here, Brown has not alleged any facts to support invocation of the *Younger* exceptions. His request for injunctive relief is thus a non-starter. Instead of running to federal court, Brown should raise his contentions before the state courts, which are perfectly capable of determining whether his federal rights have been violated. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("State courts, like federal courts, are obliged to enforce federal law.").[3]

---

[3] For that matter, to the extent Brown seeks immediate release from confinement, he is in substance bringing a 28 U.S.C. § 2241 habeas action, not a § 1983 claim. *See Hudson v. Hubbard*, 358 F. App'x 116, 119 (2009) (citing *Medberry v.*

His claim for damages fares no better.  At the outset, the claim is not well delineated.  He asks that he be recompensed for his injuries, but he hasn't identified the specific injuries, much less their timing or who actually caused them.  The only defendant named in the body of the complaint alleged to have caused him any physical distress is Sergeant Mundy, who tased Brown in the back while he was handcuffed to the hospital bed.  (Doc. 1 at 5.)  As for the other defendants, Officer Provost simply handcuffed him to the bed at some unspecified time, and defendant McDuffy makes no appearance whatsoever.  (*Id.*)

Reading Brown's complaint charitably, he raises an excessive force claim against Mundy and perhaps a claim that Provost failed to intervene to prevent Mundy's actions.  But even accepting his complaint allegations as true, *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008); *Walker v. Grable*, 2011 WL 135703 at * 1 (11th Cir. Jan. 18, 2011),

---

*Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 77 (2005) ("[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *Wolff v. McDonnell*, 418 U.S. 539, 553-55 (1974) (delineating distinctions between using § 1983 to pursue damages, and habeas for claims affecting confinement).  But before he may pursue habeas relief, he should first exhaust his state court remedies.  If he wishes to proceed with such a claim, he should file a 28 U.S.C. § 2241 habeas petition, but he is advised that such a petition would likely be subject to immediate dismissal for lack of exhaustion.

Brown has not alleged any facts showing that the tasing served no lawful purpose.

Objective reasonableness controls in excessive force cases. *See Sanchez v. Hialeah Police Dep't*, 357 F. App'x 229, 231 (11th Cir. 2009). Courts should look to factors including whether the person poses an immediate threat to those around him, whether he is actively resisting arrest, the need for the application of force, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. *Id.*; *accord Riordan v. O'Shea*, No. 11-11982 (11th Cir. Dec. 7, 2011). The fact that Brown, an arrestee, was handcuffed states no claim whatsoever. Also, the use of some force appears to have been appropriate, for Brown has not alleged that he was compliant or posed no risk to Mundy or the other officers or bystanders standing nearby. Indeed, it appears that Brown was actively attempting to harm his captors and to effect an escape. The account from the attached police report,[4] which Brown does not dispute in the statement of claim section of his complaint, shows that he was kicking officers and spitting in their

---

[4] The police report is properly before the Court. *See Joel v. HSBC Bank USA*, 420 F. App'x 928, 929 (11th Cir. 2011) (a court may consider documents attached to a complaint when ruling on a motion to dismiss).

6

faces prior to being "pacified" by Mundy's taser.  (Doc. 1 at 8.)  Hence, this is not a case where the plaintiff had already surrendered and force was applied for no reason.  *Cf. Council v. Sutton*, 366 F. App'x 31, 36-37 (11th Cir. 2010) (county sheriff's deputies were not entitled to qualified immunity for their alleged conduct of using taser and shotgun with beanbag rounds to subdue county jail detainee in his cell when detainee was allegedly already on his knees with his hands in the air, in detainee's § 1983 excessive force claim; such alleged conduct violated detainee's clearly established Fourteenth Amendment right to be free from gratuitous force after he was subdued); *Galvez v. Bruce*, 552 F.3d 1238, 1244-45 (11th Cir. 2008) (allowing excessive force claim to proceed where officer slammed a misdemeanor suspect into a concrete structure after he was handcuffed, posed no risk or danger of flight, and offered no resistance); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (allowing excessive force claim against police officers where defendant was beaten and sprayed with pepper spray while lying face down on the ground, posed no danger of immediate harm to anyone, and was not actively resisting arrest).  Since Brown has not alleged that the use of

force was unnecessary or applied for malicious or sadistic purposes, his claim fails.

Brown has failed to state a claim for relief, and his complaint bears not even the slightest hint that it can be cured with a "second-chance" amendment. *Cf. Langlois v. Traveler's Ins. Co.*, 2010 WL 4146153 at * 1-2 (11th Cir. Oct. 22, 2010) (*pro se* IFP litigant should have been afforded an opportunity to amend deficiencies prior to dismissal where fewer than 21 days had passed since she had filed her complaint, defendants had not yet been served, no responsive pleadings had been filed, there was no risk of undue prejudice, there was no evidence of plaintiff's undue delay, bad faith, or dilatory motive, and amendment may not have been futile given additional documentary evidence attached to her appellate brief). Accordingly, this case should be **DISMISSED**.

Meanwhile, Brown must pay for filing this lawsuit. Based upon his furnished information, he owes an initial partial filing fee of $4. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula) (emphasis added). Plaintiff's custodian shall deduct $4 from Brown's account and remit it to the Clerk of Court. The custodian also shall set aside 20 percent of all future

8

deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this Order and a copy of the Consent to Collection of Fees from Trust Account shall be served upon plaintiff and his current custodian.  The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO REPORTED AND RECOMMENDED** this   12th   day of December, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA